**UNITED STATES, Appellee,**

**v.**

**Sergeant (E–5) Ronald S. HOARD SSN 139–40–5419, United States Army, Appellant.**

**SPCM 15053.**

U. S. Army Court of Military Review.

13 Oct. 1981.

---

Colonel Edward S. Adamkewicz, Jr, JAGC, Major Jerome E. Kelly, JAGC, and Captain Paul J. Moriarty, JAGC, were on the pleadings for appellant.

Colonel R.R. Boller, JAGC, Major Ted B. Borek, JAGC, Major Paul G. Thomson, JAGC, and Captain Thomas E. Booth, JAGC, were on the pleadings for appellee.

Before FULTON, CLAUSE and COHEN, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

The appellant challenges the lawfulness of United States Army Training Center and Fort Dix (New Jersey) Regulation Number 600–2, dated 31 January 1979, as changed by Change 1, dated 8 May 1979. Among other things, the regulation prohibits persons assigned full time to the training center (i. e., the "permanent party") from engaging in unofficial personal associations with persons passing through the reception station or undergoing their initial Army training at Fort Dix. Pertinent portions of the regulation are set forth in the Appendix.

Before a military judge sitting as a special court-martial, the appellant, who was a member of the permanent party of the United States Army Reception Station at Fort Dix, pleaded guilty to violating Article 92 of the Uniform Code of Military Justice, 10 U.S.C. § 892 (1976), through the following violations of the Fort Dix regulation:

a. On 18 November 1979, violating paragraph 5g "by wrongfully using Private E–1 Allen R. Cundy, Private E–1 Edward L. Westbrook, and Private Salimoney, trainees, to clean and paint his government quarters" (Specification 5, Charge I);

b. On 29 November 1979, violating paragraph 5p "by wrongfully socializing and drinking with Private E–1 Constance E. Pendergrass, a receptee" (Specification 11, Charge I);

c. On 29 November 1979, violating "paragraph 5h [sic] . . . by wrongfully engaging in sexual intercourse with . . . [a

female receptee (not Private Pendergrass)]" (Specification 8, Charge I); [1]

d. On 20 December 1979, violating paragraph 5p "by wrongfully socializing with Private E–1 Michael Wiggins, Private E–1 Harold L. Southworth, Private E–1 Edward L. Westbrook, Private E–1 Allen R. Cundy and Private E–1 Madelene L. Cintron, trainees" (Specification 1, Charge I); and

e. On 21 December 1979, violating paragraph 5p "by wrongfully socializing with Private E–1 Allen R. Cundy, Private E–1 Harold L. Southworth, Private E–1 Edward L. Westbrook and Private E–1 Madelene L. Cintron, trainees" (Specification 10, Charge I).[2]

Appellant also pleaded guilty to violating Article 92 by being derelict in his duty as charge of quarters "in that he willfully abandoned his post where it was his duty to stay," leaving it to engage in the sexual intercourse that was the subject matter of Specification 8 of Charge I (c., above).

After determining that the pleas of guilty were provident and hearing evidence in extenuation and mitigation, the military judge sentenced appellant to be reduced to the grade of Private E–1 and to be discharged from the service with a bad-conduct discharge. The convening authority approved the sentence, thereby vesting our appellate jurisdiction.[3]

All that the record, exclusive of the allied papers, discloses concerning the circumstances of the offenses comes from appellant's responses during the plea hearing in which he described to the military judge the factual basis for his pleas of guilty.[4]

According to appellant, the use of the several trainees for personal purposes occurred when they came to his on-post family quarters and found him cleaning and painting in preparation for a visit by the public authorities who supervised his custody of his children (he being separated from his wife). Sympathetic to his situation, he said, the trainees voluntarily helped him clean and paint the kitchen.

On 20 December, several trainees who had passed through his platoon in the Reception Station (including, we note, two who had helped with the painting in November), came to his quarters for the purpose, he said, of conveying holiday greetings, and, although he warned them of the restrictions, he allowed them to come in. He could not recall how long they had stayed, but conceded that they sat around and talked. Private Cintron, on the other hand, was there at his invitation. They had "developed a friendship," and she wanted to meet his children. He conceded that he had a drink while the group was there, but failed to recall whether any of his guests did. Appellant depicted the events of 21 December as a mirror image of the events of the day before: The receptees again returned without being invited. They remained an hour and a half. Private Cintron, whom he had brought there, was visit-

---

1. Paragraph 5h, cited in Specification 8 of Charge I, applies to permitting physical contact between or among trainees or receptees and does not involve direct contact by members of the permanent party. It is paragraph 5a, instead, that deals with physical contact by members of the permanent party. This distinction appears to have evaded the parties to the trial and has not been raised on appeal. In view of the particulars included in the specification, we do not believe that misdesignation of the subparagraph requires relief. See *United States v. Smith*, 8 M.J. 522, 524–25 (A.C.M.R.1979); *United States v. DiGiulio*, 7 M.J. 848, 856–57 (A.C.M.R.1979).

2. When the judge accepted appellant's pleas of guilty to these specifications, the trial counsel offered no proof as to six other specifications of violating the same regulation or proof concerning a separate charge of possession and use of marihuana. This was not, however, pursuant to any agreement or plea bargain with appellant or his counsel.

3. Article 66(b), Uniform Code of Military Justice, 10 U.S.C. § 866(b) (1976).

4. See note 2, *supra*. The prosecutorial decision not to pursue the remaining charges after appellant pleaded guilty to some charges, and decision to introduce no evidence in aggravation, leaves the appellate court with no information concerning the nature and extent of the socializing involved other than that supplied by the party to the trial most likely to minimize his involvement except as necessary to respond to the military judge's questions concerning the factual basis of the guilty pleas.

ing his children again. He drank a beer, but he said that no one else did. Indeed, so self-serving did appellant's story become that the military judge inquired particularly of the defense whether it wished to persist in the plea of guilty.

The events of 29 November he depicted as follows: Appellant socialized with Private Pendergrass, for how long he could not say, by sharing a beer with her in the orderly room during his tour of duty as the charge-of-quarters. At another time during the same period of duty he called a female receptee whom he knew and they went to a room across the hall from his duty post and engaged in sexual intercourse.

Before entering appellant's pleas, trial defense counsel attacked the constitutionality of the Fort Dix regulation, asserting that the regulation was void for vagueness; established an unlawful conclusive presumption that permanent party contacts with receptees or trainees were bad without regard to the particular facts; and violated the "right to associate and right to marry." Proof was offered that appellant (who was legally separated from his wife and had custody of their two young children) had asked two of the women named in the specifications (Private Cintron and Private Perez, named in other specifications not prosecuted) to marry him. After brief argument by both sides, the military judge denied appellant's motion to dismiss, stating no reasons.

The constitutional attack is renewed on appeal. Appellant's Assignment of Error I asserts—

THE FINDINGS OF GUILTY TO SPECIFICATIONS 1, 5, 8, 10, AND 11 OF CHARGE I MUST BE SET ASIDE BECAUSE PARAGRAPH 5(p), FORT DIX REGULATION 600–2 IS UNCONSTITUTIONALLY VOID FOR VAGUENESS AND UNCONSTITUTIONALLY OVERBROAD.[5]

His Assignment of Error II urges that the same findings be set aside because the same paragraph violates his right to equal protection under the Fifth Amendment.

I

The appellant's attack on paragraph 5p of the Fort Dix regulation as an overbroad restriction on speech, freedom of association, and marriage, and on the grounds that it gave no notice his conduct was criminal, fails for several reasons.

■ First, as to overbreadth, the regulation proscribes conduct, not mere expression.[6] For the proper purpose of insulating receptees and trainees from potentially troublesome relationships and influences during their initial indoctrination period, the regulation plainly applied to appellant's own conduct in engaging in unofficial personal associations with trainees or receptees. Any impact on his freedom of speech was purely incidental, for he was not forbidden from conversing with the receptees or trainees.

■■ As for the possibility that paragraph 5p might reach conduct other than that in which appellant engaged, doctrines of First Amendment overbreadth asserted as challenges to military statutes and regulations are subject to the qualification that First Amendment guarantees apply differently to the military community in view of its unique mission and need for internal discipline. *Parker v. Levy*, 417 U.S. 733, 758, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974). Accordingly, the considerations that permit a defendant in civilian society

---

5. We note that Specifications 5 and 8 have nothing to do with paragraph 5p. They involve violation of prohibitions on private use of trainee or receptee labor or prohibitions on physical contact with trainees or receptees. Nothing in appellant's argument attacks those particular restrictions as being vague or overbroad. Accordingly, our consideration of this assignment of error is limited to paragraph 5p of the regu-

lation and Specifications 1, 10, and 11 of Charge I.

6. That paragraph 5p is not aimed at speech is further indicated by the fact that a different paragraph of the regulation, not challenged here, proscribes certain forms of expression, namely speech that is abusive or degrading. Expressio unius est exclusio alterius.

to challenge a statute (or regulation) on grounds that it might apply unconstitutionally to conduct other than that in which he himself had engaged, "must be accorded a good deal less weight in the military context." *Id.* at 760, 94 S.Ct. at 2563.[7] Therefore, we will not brook appellant's attack on paragraph 5p as an infringement of a right to marry when, in his own case, he was already married, made no showing that anyone else was willing to marry him, and the regulatory prohibitions, whatever their effect, were at most temporary in view of the impermanent nature of receptee or trainee status.[8]

Appellant's assertion that paragraph 5p of the Fort Dix regulation also is unconstitutional by reason of vagueness raises only one question: Did he have fair notice from the language that the particular conduct in which he engaged was punishable?[9]

There can be no doubt that he had such notice. During the judge's inquiry into the providence of his guilty plea, appellant several times mentioned warning the trainees of the danger in their visiting his home. Undisputably, he was referring to the regulatory proscription of unofficial personal associations.[10] If he knew that having these previously uninvited trainees in his quarters for social reasons posed the risk of punishment, he also must have known that inviting and transporting Cintron there and drinking with Pendergrass were likewise prohibited. Appellant's guilty knowledge undermines his appellate attack on the regulation for vagueness.

Paragraph 5p of Fort Dix Regulation 600–2 is neither overbroad nor vague in respect to appellant's own violations thereof.

II

Assignment of Error II is as follows: THE FINDINGS OF GUILTY TO SPECIFICATIONS 1, 5, 8, 10, AND 11 OF CHARGE I MUST BE SET ASIDE BECAUSE PARAGRAPH 5(P) OF FORT DIX REGULATIONS 600–2 VIOLATES THE APPELLANT'S RIGHTS TO EQUAL PROTECTION AS GUARANTEED BY THE FIFTH AMENDMENT.

Appellant contends that "[p]aragraph 5(p) arbitrarily distinguishes between two classifications of permanent party. Permanent party members having a pre-existing familial or 'bona fide friendship' relationship with trainees or receptees may socialize with those individuals; while, those permanent party members lacking these pre-existing relationships may not socialize with trainees or receptees."[11]

Paragraph 5p, as will be seen from the Appendix, *infra*, does indeed establish as a defense to a charge of improper social associations the existence of family relationship

---

7. *See United States v. Sweney*, 48 C.M.R. 476, 477-78, n.2 (A.C.M.R.), *pet. denied*, 48 C.M.R. 1000 (C.M.A.1974).

8. In this connection, we also find apt the following passage:

Nor does this Court find merit in plaintiff's argument grounded upon his First Amendment right of freedom of association. Persons certainly do not forfeit constitutional protections upon entrance into the military. Still, the different character of military life and of the military community may require a restriction of certain conduct that is considered to adversely affect discipline and the proper performance of duties. *Cf. Parker v. Levy, supra*, 417 U.S. at 758, 94 S.Ct. 2547, [at 2562] 41 L.Ed.2d 439 [1974]. While similar limitations might be offensive if applied to civilians, in the context of military life the prohibition on specified types of fraternization serves a valid and necessary purpose.

*Staton v. Froehlke*, 390 F.Supp. 503, 506–07 (D.D.C.1975); *cf. United States v. Smith*, 1 M.J. 156, 157–58 (C.M.A.1975).

9. *Parker v. Levy*, 417 U.S. 733, 755–56, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974); *United States v. Scoby*, 5 M.J. 160, 162–63 (C.M.A. 1978); *United States v. Linyear*, 3 M.J. 1027, 1029 (N.C.M.R.1977); *United States v. Sweney, supra*.

10. *See* Record at 55, 59, 60.

11. Brief on Behalf of Appellant at 10. Once again, we are constrained to observe that Specifications 5 and 8 do not involve paragraph 5p of the regulation. Note 5, *supra*. Because the distinctions mentioned in appellant's argument are not involved in those specifications, we are here concerned only with Specifications 1, 10, and 11 of Charge I.

or the pre-existence of a bona fide friendship between the member of the permanent party and receptee or trainee involved.[12] However, as the Court of Military Appeals has stated:

> For the Government to make distinctions does not violate equal protection guarantees unless constitutionally suspect classifications like race, religion, or national origin are utilized or unless there is an encroachment on fundamental constitutional rights like freedom of speech or of peaceful assembly. The only requirement is that reasonable grounds exist for the classification used.[13]

As we have seen, although the prohibition in paragraph 5p arguably may be seen as bearing upon a constitutional right of association, it does not in the military society place unconstitutional limits on that right.[14] Nor are any suspect classifications involved. What might be termed the family or bona fide friendship defense does not discriminate against those members of the permanent party not having any such relationship with a trainee or receptee, particularly because it does not permit association with all trainees or receptees but only those with whom such a social relationship exists. Instead, the exception serves laudably to lessen the degree to which the rights of those having relationships formed at a time and place beyond the purview of the regulation would be impaired by becoming subject to the regulation. The distinction thereby created is judicious rather than capricious.

## III

█ Subsequent to the filing of initial pleadings, appellant moved to file supplemental argument asserting, in effect, that the imposition of a bad-conduct discharge is punishment inappropriately severe. In that connection, he moved to file with the Court evidence of his post-trial promotion to "Acting Sergeant." We have declined to receive this extra-record documentary evidence, which is unconnected with any need for us to reassess the sentence due to error in the case.[15] Nevertheless, we have considered appellant's argument regarding the severity of his sentence. It will be recalled that, in addition to three instances of unlawful personal association with trainees, two of which occurred with some of the same individuals on consecutive days and included one with whom appellant had separately formed a friendship and brought to his home, appellant also admitted using trainees to assist in the painting of his family quarters and admitted having sexual intercourse with a receptee. The bad-conduct discharge is appropriate.

The findings of guilty and the sentence are affirmed.

Judge CLAUSE and Judge COHEN concur.

## APPENDIX

### TREATMENT AND/OR HANDLING OF TRAINEES AND RECEPTEES

1. *PURPOSE*: This regulation prescribes [sic] certain transactions, relationships and other activities between permanent party, both military and civilian, and receptees [sic] or trainees in a manner which will protect the best interests of all personnel. Commission of one or more of the prohibited practices or failure to comply with the requirements listed in paragraph 5 of this regulation by a permanent party military member constitutes a violation of Article 92, UCMJ . . . .

2. *SCOPE*: Compliance with this regulation is mandatory for all USATC [U.S. Army Training Center] and Fort Dix permanent party . . . as hereinafter defined.

3. *DEFINITIONS*:

---

12. As to the establishment of defenses within regulatory prohibitions, see *United States v. Cuffee*, 10 M.J. 381 (C.M.A.1981).

13. *United States v. Means*, 10 M.J. 162, 165 (C.M.A.1981) (citations omitted).

14. See note 8, *supra*.

15. *United States v. Castleman*, 10 M.J. 750 (A.F.C.M.R.1981).

a. *Permanent Party.* All officers, warrant officers, enlisted personnel and civilian employees . . . working at, assigned to, or attached to USATC and Fort Dix. . . .

b. *Receptee.* All personnel (including new accessions and prior service reenlistees to include individuals involuntarily recalled to active duty from the National Guard or Army Reserve) assigned or attached to the US Army Reception Station, Fort Dix, for in-processing prior to shipment to Basic Training (BT), Advanced Individual Training (AIT), other duty station for assignment or relief from active duty.

c. *Trainee.* All personnel undergoing BT, AIT and ESL [not defined] training, to include those awaiting training, and those who have completed training and remain in a "holdover" or "administrative hold" status while awaiting further assignment. . . .

4. *GENERAL:*

a. The morale and welfare of receptee and trainee personnel and the development and maintenance of discipline are the responsibility of all permanent party assigned or employed on this installation. To accomplish this goal [sic], strict adherence to high standards of official and personal behavior and relationships between permanent party and receptee and trainee personnel is required. Restrictions on relations between receptee and trainee personnel and permanent party must be observed. It is everyone's responsibility to report to their [sic] chain of command any violations of the prohibited practices listed below.

b. Receptee and trainee personnel will be treated as adult individuals at all times. The atmosphere within training units is to be devoid of harassment. Respect for the dignity of the individual trainee and receptee will be clearly evident at all times.

5. *PROHIBITED PRACTICES/REQUIREMENTS*: Permanent party will not:

a. [As amended by Change 1] Engage in physical contact with or touch any trainee or receptee to include but not limited to, caressing, manhandling, striking, kicking and jabbing with fingers. This prohibition shall not prevent reasonable physical contact or touching necessitated in cases of emergency, for the protection of life and limb, in self defense or as a necessary part of training or administrative activities.

b. [Unauthorized formations and drills.]

c. [Harassing, humiliating, or degrading activity.]

d. [Abusive language.]

e. [Right to consult officials.]

f. [Right to attend sick call.]

g. Utilize any trainee or receptee for personal gain or personal use.

h. Permit or solicit any trainee or receptee to engage in physical contact with or touching of any other trainee or receptee to include, but not limited to . . . [remaining provisions similar to paragraph 5a, above].

i. [Transportation by privately-owned vehicle.]

j. [Gambling.]

k. [Bribery.]

l. [Gifts.]

m. [Selling goods or services.]

n. [Borrowing; lending.]

o. [Financial transactions.]

p. [As amended by Change 1] Socialize, to include dating and any other unofficial personal association, with trainee or receptee personnel and their family members. This prohibition should not be construed so as to prohibit socializing between members of immediate families or those based upon pre-existing bona fide friendships with the trainee or receptee or his/her family. This prohibition does not apply to installation-approved functions or activities which are open to both permanent party and trainee or receptee personnel.

q. [Entering sleeping or living quarters designed for opposite sex.]