UNITED STATES, Appellee,

v.

Specialist Five Dan MOORER III, SSN 265–49–2940, United States Army, Appellant.

CM 441935.

U. S. Army Court of Military Review.

11 Jan. 1983.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, Captain David M. England, JAGC, Captain Edward J. Walinsky, JAGC, and Captain Donna L. Chapin, JAGC, were on the pleadings for appellant.

Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, Major Michael L. DeBusk, JAGC, and Captain Gary L. Hoffman, JAGC, were on the pleadings for appellee.

Before FULTON, COKER and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

COKER, Judge:

Appellant was convicted by a general court-martial composed of members of violating Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892 (1976), on two specifications of accepting a gratuity from two soldiers in a training status and on one specification of asking a soldier in a training status for a date, contrary to a policy letter by the Commander, Fort Gordon, Georgia. In addition, he was convicted of violating Article 134, UCMJ, 10 U.S.C. § 934 (1976) on two specifications of receiving graft as compensation for services to be rendered by him in relation to his official duties. These latter specifications mirror the conduct of the two "gratuity" specifications. His adjudged sentence of a bad-conduct discharge, forfeiture of all pay and allowances, and reduction to Private E–1, was reduced by the convening authority to a bad-conduct discharge, forfeiture of $334.00 pay per month for twelve months, and reduction to the lowest enlisted grade.

This case involves the interpretation and application of a command "policy letter" that constitutes the general order and is intended to circumscribe the relationships between cadre or permanent personnel and those soldiers assigned to the training center only temporarily as trainees or students. The letter is set forth in the Appendix. Orders of this nature are regarded as necessary at training centers to promote good order and discipline due to the likely susceptability of trainees to improper influence from those in whose care they have been committed for duty purposes. *See generally United States v. Hoard,* 12 M.J. 563 (A.C. M.R.1981), *pet. denied,* 13 M.J. 31 (C.M.A. 1982).

Appellant was a personnel clerk, responsible for processing administrative discharges. He suggested to two trainees whose discharges he was processing that their discharges would be expedited if they paid him certain sums of money. He subsequently received from them the sums requested. In return for expediting the medical discharge of a third female trainee, he asked her for a date. He alleges as error that the conviction of accepting gratuities cannot stand since a gratuity is a gift, whereas the evidence showed he received compensation for his services in processing the discharges. He also alleges that the acceptance of gratuities and receipt of compensation are multiplicious. Finally, he alleges that asking a female trainee for a date does not violate the policy letter. We agree in part with the last contention.

Initially we suggest that the Fort Gordon policy letter is not well drafted. Clarification within the regulation could settle any dispute as to whether the term "gratuities" is used in the sense of a bona fide gift, as the term appears to be used in Army Regulation 600–50, para. 2–2c(14) (1982) (customary exchange of gratuities among friends and relatives), or in the more correct and generally understood sense of implying remuneration or some expectation of return. *See* Webster's Third New International Dictionary 992 (1971); Webster's New Dictionary of Synonyms 374 (1973).

We are convinced that the most reasonable interpretation of the policy letter prohibits the type of conduct at issue in this case. The first paragraph of the letter states the objective of prohibiting relationships and associations that are prejudicial to good order and discipline. While not an element of the disobedience charge, the prejudicial nature of the conduct was an element of the "graft" charge and was proven beyond a reasonable doubt thereby establishing that the conduct violated the purpose of the policy letter. Subparagraph 1(a) of the letter specifically condemns three types of relations with trainees. The first clause proscribes social relations and the third clause, commercial relations. The middle clause proscribes conduct that is neither solely social nor solely commercial. "Gifts, services, or other gratuities" in this specific context can only mean the acceptance of something of value, whether tangible or intangible, without regard to motive. Thus the mere acceptance of money by the appellant from a soldier in training status is violative of the policy letter, whether it be characterized as bona fide gifts on one extreme or fruits of extortion on the other extreme. The Court recognizes that in the modern Army and in a given case, this policy letter may prohibit otherwise acceptable conduct such as family associations. The commander of Fort Gordon has not seen fit to provide for such exceptions and the extent of such proscriptive action is not before this Court. See United States v. Hoard, 12 M.J. at 569 (Appendix, para. 5(p)).

■ The trial judge determined that the "graft" and "gratuity" specifications were not separately punishable; he so instructed the court members and quoted them a maximum sentence consistent with that advice. We need not decide whether his ruling was correct. The multiplication of charges was not unreasonable, for clearly there were, as shown by the first assignment of error, exigencies of proof. Such exigencies can persist at further levels of review and, therefore, dismissal at this level is not appropriate. United States v. Haywood, 6 M.J. 604 (A.C.M.R.1978).

■ The third specification of the Article 92 violation charged the appellant with "wrongfully and unlawfully trying to persuade ... a female soldier in a student/training status, to go out with him on a date." While such conduct as dating falls within the proscription of the policy letter as the giving of special consideration on account of sex, or as social fraternization, (we do not consider such conduct "sexual abuse" as defined in this policy letter since a purpose of "personal sexual gratification" was neither shown nor necessarily implied), the invitation was but an attempt to violate the policy letter. This would be a violation of Article 80, 10 U.S.C. § 880, rather than Article 92. Under the circumstances shown by the evidence, we regard appellant's invitation as amounting to more than mere preparation. We disagree with appellant's related assignment of error to the effect that the government must allege, and the judge's instructions must specify, the particular provision violated when several may be involved. Any error was waived as no motion for appropriate relief was made at the trial.

In view of the foregoing, the Court affirms only so much of the findings of guilty of Specification 3 of the Charge as find, that the described appellant did, at the time and place alleged, attempt to violate the lawful general regulation cited by wrongfully and unlawfully trying to persuade Private E-1 Denise Metzger, a female soldier in a student/training status, to go out with him on a date, in violation of Article 80, UCMJ.

The remaining findings of guilty are affirmed. The sentence is affirmed.

Senior Judge FULTON and Judge NAUGHTON concur.

### APPENDIX

4 October 1979

SUBJECT: Command Policy Letter—Personal Relationships

1. Permanent party military personnel and civilian government employees of Fort Gor-

don are prohibited from engaging in relationships or associations with soldiers in a training status which are prejudicial to the order and discipline of the Armed Forces. These associations and acts will include, but will not be limited to, the following:

a. Social fraternization; acceptance of gifts, services, or other gratuities; borrowing or lending of money; and commercial solicitation, to include the use of rank, grade or position to intimidate or coerce soldiers in a training status into buying commodities, goods or services.

b. Sexual abuse of soldiers in a training status: Sexual abuse is defined as the use of rank or supervisory position to intimidate or take advantage of a soldier in a training status for personal sexual gratification regardless of the knowledge or consent of the individual involved. Overt sexual acts as well as suggestive or sexist behavior are prohibited.

2. Permanently assigned personnel are permitted to participate and associate with soldiers in a training status in the following supervised situations: Unit, section, or departmental parties; postwide/schoolwide functions; and participation in organized sporting events on an individual or team basis.

3. Military and civilian personnel will not show undue attention, whether it constitutes favoritism or harassment, or give special consideration to any soldier in a training status based on sex, age, race, color, place of national origin or religion. Relationships between permanent party and soldiers in a training status are to be objective and professional.

4. Soldiers in a training status will be advised by the chain of command on how to cope with sexual harassment, provocation or advances. Advice is also available from the Center Equal Opportunity Office (extension 4357 (HELP)). Incidents of this nature should be immediately reported to the chain of command or by dialing HELP, the sexual abuse hotline operated by trained members of the Center Equal Opportunity Office. HELP is available at all times—day or night, effective 15 October 1979.

5. This letter is directive in nature and violations of these policies will subject offenders to punitive action under the Uniform Code of Military Justice or adverse administrative action under appropriate regulations.