**UNITED STATES, Appellee,**

v.

**Private E2 Samuel M. WILSON, 453–59–0169, United States Army, Appellant.**

**ACMR 9001547.**

U.S. Army Court of Military Review.

24 Sept. 1991.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Alan M. Boyd, JAGC, Captain Robin N. Swope, JAGC, Captain Michael W. Meier, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Timothy W. Lucas, JAGC, Captain Jonathan F. Potter, JAGC, Captain Gregory T. Baldwin, JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

OPINION OF THE COURT

GRAVELLE, Judge:

On mixed pleas, the appellant was found guilty of disobeying a lawful order and

dereliction of duty, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892 (1982) [hereinafter UCMJ]. A military judge, sitting as a special court-martial, sentenced him to a bad-conduct discharge, confinement for four months, forfeiture of $482.00 pay per month for four months, and reduction to Private E1. The convening authority approved the sentence.

The issue presented is whether the appellant's act of blowing his nose on the American flag, while he was a member of a flag-raising detail, was conduct protected by the free speech provisions of the First Amendment. We hold that it was not protected speech.

### I.

The appellant, a military policeman (MP), while preparing for a flag-raising detail, complained to his fellow MPs that the Army and the United States "sucked." Another MP told him that he should move to a communist country if he didn't like it. The appellant replied, "[t]his is what I think," and blew his nose on the American flag, leaving on the flag "a small wet circle." After another brief exchange of words, the appellant participated without further incident in the flag-raising detail. For his action the appellant was charged with dereliction of duty in that he "willfully failed to ensure that the United States flag was treated with proper respect by blowing his nose on the flag when it was his duty as a military policeman on flag call to safeguard and protect the flag." [1]

The military judge made lengthy findings of fact and conclusions of law, which included the following:

The military police company, the 8th Military Police Company is normally tasked to raise and lower the flag because it is a sensitive, high visibility duty. The flag in question is property of the United States Army, the accused is a military policeman assigned to the 8th Military Police Company. I found that the accused's statements and his conduct in blowing his nose on the flag when viewed together are expressive conduct[,] therefore his words and actions are entitled to protection unless there is a greater countervailing government interest in suppressing the particular speech or expressions in question.

Members of the American military do in fact have freedom of speech which is more limited than their civilian counterparts....

.    .    .    .    .

If the accused in this case were a civilian, [and] purchased or otherwise procured an American flag and because of the exercise of his freedom of speech decided to do anything to that flag it would probably, I should say undoubtedly be protected under the Texas case decided by the Supreme Court.[2] If the accused was a soldier but off duty, out of uniform, procured a flag, decided to burn it or blow his nose on it or perhaps spit on it ... arguably then that expression of a position might be protected, that issue has yet to be decided. But the accused here is being prosecuted for violating a specific military duty. The fact that the accused's actions here involved alleged disrespect to a venerated object

---

1. The government's theory of the case was that the duty violated was based on a custom of the service. *See United States v. Johanns*, 20 M.J. 155 (C.M.A.), *cert. denied* 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985); *United States v. Callaway*, 21 M.J. 770 (A.C.M.R.1986). To prove the custom, the government asked the military judge to take judicial notice of Dep't of Army, Field Manual 22–5, Drill and Ceremonies, Appendix E, Flags and Colors (8 Dec. 1986), and Army Reg. 840–10, Flags, Guidons, Streamers, Tabards, and Automobile and Aircraft Plates, ch. 2, Flag of the United States (1 October 1979). To prove knowledge of the custom, the govern-

ment presented the testimony of the unit first sergeant, a former drill sergeant, who described the standard flag call instruction given to recruits in basic training and the training for flag call provided within the military police company. We note that the Court of Military Appeals in *United States v. Lewis*, 12 M.J. 205, 208 (C.M.A.1982), *in dicta*, acknowledged that failing to show respect for the flag can amount to the offense of dereliction of duty.

2. *Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989).

probably did have some weight in determining the disposition of this case.

· · · · ·

On balance I find that the government does have an overriding interest in pre-scribing [sic] conduct of this nature under the specific facts of this case, such that the accused's First Amendment rights must give way to that governmental interest.

We find that the military judge's findings of fact and conclusions of law are correct and are supported by evidence of record. We further agree with his First Amendment analysis as to how those rights apply in a military setting.

## II.

▪ Members of the armed forces enjoy the First Amendment's protections of freedom of speech. This includes not only the right to verbally express ideas but also to utilize non-verbal means of communication. However, members of the armed forces may be subject to restraints on the exercise of their freedom of speech not faced by civilians. This is so because the needs of the armed forces may warrant regulation of conduct that would not be justified in the civilian community. *United States v. Womack,* 29 M.J. 88 (C.M.A.1989), *citing Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), and *United States v. Hoard,* 12 M.J. 563 (A.C.M.R.1981), *pet. denied,* 13 M.J. 31 (C.M.A.1982). The Supreme Court has said:

> Our review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society. The military need not encourage debate or tolerate protest to the extent that such tolerance is required of the civilian state by the First Amendment; to accomplish its mission the military must foster instinctive obedience, unity, commitment and esprit de corps.... The essence of military service "is the subordination of the desires and interests of the individual to the needs of the service."

*Goldman v. Weinberger,* 475 U.S. 503, 507, 106 S.Ct. 1310, 1313, 89 L.Ed.2d 478 (1986), *citing Orloff v. Willoughby,* 345 U.S. 83, 92, 73 S.Ct. 534, 539, 97 L.Ed. 842 (1953). Military necessity, including the fundamental necessity for discipline, can be a compelling government interest warranting the limitation of the right of freedom of speech. *See e.g., United States v. McFarlin,* 19 M.J. 790 (A.C.M.R.1985), *pet. denied,* 20 M.J. 314 (C.M.A.1985) (governmental interest in preventing sexual liaisons between noncommissioned officers and subordinates is sufficiently compelling to justify governmental regulation of privacy right). "[T]he right of free speech in the armed services is not unlimited and must be brought into balance with the paramount consideration of providing an effective fighting force for the defense of our Country." *United States v. Priest,* 45 C.M.R. 338, 344 (C.M.A.1972).

▪ The First Amendment protects not only words but "expressive conduct." *Texas v. Johnson,* 109 S.Ct. at 2538–39. Desecration of the American flag can amount to expressive conduct protected by the First Amendment. *Id.* Such conduct cannot be prohibited simply because society may find the idea embodied in the symbolic act offensive or disagreeable. *Id.* at 2544. The government has a freer hand in limiting expressive conduct than it has in restricting the written or spoken word. *Id.* at 2540.

In addressing the First Amendment issue, two questions need to be answered. First, was the conduct expressive in nature? Second, if the conduct was expressive, was the government's regulation only incidentally related to the suppression of free speech? *Johnson,* 491 U.S. 397, 109 S.Ct. 2533. If both questions are answered in the affirmative, we apply a four-part test established by the Supreme Court in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672, *reh'g denied* 393 U.S. 900, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). *Johnson,* 491 U.S. 397, 109 S.Ct. 2533; *Barnes v. Glen Theatre, Inc.,* —— U.S. ——, 111 S.Ct. 2456, 115 L.Ed.2d 504

(1991).[3] The four-part test in *O'Brien,* to determine if a government regulation is sufficiently justified, is as follows:

[If the regulation] is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

391 U.S. at 377, 88 S.Ct. at 1679.

### III.

■ In addressing the First Amendment issue, the military judge specifically found that the appellant's conduct was expressive and that the government's regulation of the conduct was related only incidentally to the appellant's free speech, therefore, the *O'Brien* four-part test applied. We agree with the military judge's conclusions.

The government regulation in the case at bar is Article 92(3), UCMJ, which proscribes derelictions in the performance of duty.[4] We find that Article 92(3), UCMJ, meets the four-part test of *O'Brien.* First, Article 92, UCMJ, is a legitimate regulatory measure because the government may regulate the conduct of soldiers. United States Constitution, article I, section 8. The military judge correctly concluded that the government may regulate a soldier's conduct while on duty and in uniform. *See,*

*e.g. Weinberger,* 475 U.S. 503, 106 S.Ct. 1310. Second, Article 92, UCMJ, furthers an important and substantial government interest in promoting an effective military force. "To prepare for and perform its vital role, the military must insist upon a respect for duty and a discipline without counterpart in civilian life." *United States v. Heyward,* 22 M.J. 35, 37 (C.M.A.), *aff'd,* 23 M.J. 49 (C.M.A.), *cert. denied,* 479 U.S. 1011, 107 S.Ct. 656, 93 L.Ed.2d 710 (1986), *quoting Schlesinger v. Councilman,* 420 U.S. 738, 757, 95 S.Ct. 1300, 1312–13, 43 L.Ed.2d 591 (1975). Third, the purpose of Article 92, UCMJ, in proscribing failures to perform military duty is, on its face, unrelated to the suppression of free speech. Finally, the incidental restriction of alleged First Amendment freedoms is no greater than is essential to further the government interest in promoting the disciplined performance of military duties.

The military judge properly considered several factors in determining that the appellant had violated a legitimate military duty. He properly took into account the unique needs of the military community, the appellant's flag-raising duty as a military policeman at the time of the incident, and the fact that the prosecution was for dereliction of a duty to safeguard the government-owned flag.[5] Furthermore, the military judge correctly balanced the needs of the government in promoting a disciplined military force with the rights of

---

3. In *O'Brien,* the Supreme Court found that the statute proscribing burning or mutilating draft cards on its face dealt with conduct unrelated to free speech. The Court applied the four-part test and found that O'Brien's *conduct* in burning his draft card was subject to criminal punishment. O'Brien was punished for the noncommunicative impact of his conduct on the operation of an efficient selective service system and nothing else. *Id.* at 391, 88 S.Ct. at 1686. *See also United States v. Eichman,* 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990) (statute passed by Texas legislature in response to *Johnson* was unlawful because it suppressed expressive conduct out of concern for the idea being expressed).

4. Under this article, a soldier is derelict in the performance of duties when he or she willfully or negligently fails to perform those duties or when that soldier performs them in a culpably

inefficient manner. Manual for Courts–Martial, United States, 1984, Part IV, para. 16c(3)(c) [hereinafter MCM, 1984]. A duty may be imposed by treaty, statute, regulation, lawful order, standing operating procedure, or custom of the service. MCM, 1984, Part IV, para. 16c(3)(a). Constructive knowledge of those duties "may be demonstrated by regulations, training or operating manuals, customs of the service, academic literature or testimony, testimony of persons who have held similar or superior positions, or similar evidence." MCM, 1984, Part IV, para. 16c(3)(b).

5. Whether the flag is publicly or privately owned is a factor to consider. *See Spence v. State of Washington,* 418 U.S. 405, 408–9, 94 S.Ct. 2727, 2729–30, 41 L.Ed.2d 842 (1974) (the government "may forbid anyone from mishandling in any manner a flag that is public property"); *Eichman,* 110 S.Ct. at 2408 n. 5.

 

the appellant under the First Amendment.[6] Under the facts of this case, the appellant's claim that his First Amendment rights were violated is without merit.

### IV.

The appellant has also raised several issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982). Included among them are allegations that the military judge improperly consulted with an unnamed officer prior to deciding upon a sentence in this case and that the defense counsel provided ineffective assistance. We have reviewed the appellant's affidavit and the affidavits filed by the military judge and the defense counsel in response to this Court's order. We specifically find that the allegations are legally and factually without merit.

The remaining issues raised by the appellate defense counsel and by the appellant are without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge JOHNSON and Judge WERNER concur.

---

6. The military judge, immediately following announcement of sentence, said, "[f]or the record I did not punish the accused for the content of his message expressed on the morning of 31 December."