# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class WILLIAM J. DELGADO**
**United States Army, Appellant**

ARMY 20140927

Headquarters, 8th Army
Mark A. Bridges, Military Judge
Colonel Craig A. Meredith, Staff Judge Advocate

For Appellant: Lieutenant Colonel Charles D. Lozano, JA; Captain Heather L. Tregle, JA; Captain Joshua G. Grubaugh, JA (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Major Daniel D. Derner, JA; Captain Timothy C. Donahue, JA (on brief).

6 January 2016

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of violating a lawful general regulation and one specification of sexual assault in violation of Articles 92 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 920 (2012) [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for three years and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises one assignment of error which we find to be without merit. We also find the matters raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) to be meritless. We find one additional issue, however, which warrants discussion and relief.

**BACKGROUND**

Appellant was serving as an acting first sergeant and training non-commissioned officer (NCO) for Dental Headquarters in Yongsan, Korea. Appellant was also the Sexual Harassment/Assault Response and Prevention (SHARP) representative for his unit.

New to the Army, twenty-year old Private First Class (PFC) YCG arrived in Korea in October 2012 and was assigned to appellant's unit. Appellant, who was of similar cultural and ethnic background as PFC YCG, took her under his wing and began to mentor her. Appellant even assured PFC YCG's father that he should not worry as appellant would look after her. Away from home for the first time, PFC YCG placed her trust in appellant.

In November 2012, appellant and another NCO held a Thanksgiving Day party at an off-post residence and invited junior and senior enlisted soldiers and civilians who were in Korea without family to the party. Private First Class YCG attended the get-together. After an evening of drinking and eating, most of the guests left the party, but several party-goers remained behind. Private First Class YCG stayed behind to help clean up. After assisting in the clean-up effort, PFC YCG wanted to go home, but was left waiting for someone to take her back to her barracks because those she had come with had already departed.

The remaining group, all senior to PFC YCG, began to play sexually-charged games, including "Have You Ever" and "Spin the Bottle." Private First Class YCG, who was intoxicated by this point in the evening, reluctantly capitulated to participating in "Spin the Bottle." In their version of Spin the Bottle, players sat in a circle, spun a bottle in the center of the circle until it stopped on someone, and then the person to whom the bottle pointed either removed an article of clothing or responded to a dare of some sort. Some players, including appellant, ended up naked as a result of playing the game. Some players accepted the "dare" and performed sex acts on each other in open view of those playing the game.

Drunk and tired, and in a semi-clothed state of dress, PFC YCG eventually withdrew to the bathroom to gather her senses. When she returned from the bathroom several minutes later, the game had stopped. Private First Class YCG, still waiting for a ride home, sat on the floor and, from a combination of fatigue and drunkenness, passed out.

When PFC YCG awakened, she felt someone touching her breasts and hips and stomach. She opened her eyes to find it was appellant's girlfriend, "Maui." She then felt Maui performing oral sex on her. Maui moved up PFC YCG's body and straddled her while fondling PFC YCG breasts and kissing her body. Private

First Class YCG tried to push Maui off but was powerless to do so. As Maui sat atop PFC YCG, she felt a tongue licking her vagina and hands pushing her thighs apart. As she attempted unsuccessfully to resist, PFC YCG saw Sergeant First Class (SFC) R walk towards her and speak to the person touching her genitalia. As a result of this conversation, the person touching her vagina ceased doing so. When the person touching her vagina stood up, she saw it was appellant.

Sergeant First Class R then wrapped PFC YCG in a blanket, and laid her on a nearby couch where she slept that evening. In the morning, SFC R drove PFC YCG back to post. Fearing reprisals from appellant, PFC YCG did not report the incident until nine months later.

Appellant was charged with and found guilty of a sexual assault, to wit: causing PFC YCG harm by penetrating her vulva with his tongue. Appellant's misconduct also led to a charge of violating a lawful general regulation, specifically Army Reg. 600-20, Army Command Policy [hereinafter AR 600-20], para. 4-14b. (18 Mar. 2008), by wrongfully engaging in a prohibited relationship with PFC YCG when he penetrated her vulva with his tongue which created an actual or clearly predictable adverse impact on discipline, authority, and morale.

## LAW AND DISCUSSION

The standard of review for factual and legal sufficiency by this Court is de novo. *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007); *United States v. Craion*, 64 M.J. 531, 534 (Army Ct. Crim. App. 2006). In resolving questions of legal sufficiency, this court is "bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *Craion*, 64 M.J. at 534. In weighing factual sufficiency, we apply "neither a presumption of innocence nor a presumption of guilt," and we make an "independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

AR 600-20, para. 4-14b. prohibits relationships between soldiers of different ranks if they:

> (1) Compromise, or appear to compromise, the integrity of supervisory authority or the chain of command.
>
> (2) Cause actual or perceived partiality or unfairness.
>
> (3) Involve, or appear to involve, the improper use of rank or position for personal gain.
>
> (4) Are, or are perceived to be, exploitative or coercive in nature.

(5) Create an actual or clearly predictable adverse impact on discipline, authority, morale, or the ability of the command to accomplish its mission.

This court has previously held that a solicitation to engage in sexual acts does not amount to a relationship as envisioned by AR 600-20 when the *verbal advance was rejected*. *United States v. Oramas*, ARMY 20051168, 2007 CCA LEXIS 588, at *6-8 (Army Ct. Crim. App. 29 Mar. 2007) (mem. op.) (emphasis added). This court has held that a single incident involving a *rejected physical advance* including touching and kissing also did not rise to the level of a relationship as defined by AR 600-20. *United States v. Morgan*, ARMY 20000928, 2004 CCA LEXIS 423, at *6-8 (Army Ct. Crim. App. 20 Feb. 2004) (mem. op.) (emphasis added). The main rationale behind these holdings is the "victim's conduct is relevant to whether or not a prohibited relationship was established." *Id*. at *7; *Oramas*, ARMY 20051168, 2007 CCA LEXIS 588, at *6-8; *see United States v. Humpherys*, 57 M.J. 83, 93-95 (C.A.A.F. 2002); *United States v. Moorer*, 15 M.J. 520, 522 (A.C.M.R. 1983) *rev'd in part on other grounds,* 16 M.J. 451 (C.M.A. 1983)(sum. disp.).

In this case, appellant's *non-consensual sexual assault* on PFC YCG cannot form the basis to establish a consensual inappropriate relationship. The evidence is clear appellant engaged in a prohibited relationship with PFC YCG through an assortment of acts including: serving the underage junior enlisted soldier under his authority alcohol at his home, engaging in sexual games with her, allowing her to bear witness to NCOs disrobing and engaging in sexual acts in her presence, exploiting his position and rank to take advantage of her naïvete by making her stay in his home well past when she asked to leave, and by allowing her to sleep at his home after passing out from underage drinking. Unfortunately, the government did not include these happenings in the charge to form the basis of an inappropriate relationship. Had the government done so, the charge may have withstood scrutiny.[*] As charged by the government, appellant's conduct is legally insufficient to establish an inappropriate relationship under AR 600-20, para 4-14.

**CONCLUSION**

Upon consideration of the entire record, the finding of guilty of Specification 2 of Charge I is set aside and that Specification is dismissed. The remaining findings of guilty are AFFIRMED.

---

[*] But for the issue putting appellant on notice of the specific intent element, an *attempted* violation of AR 600-20, para. 4-14b may have also withstood legal scrutiny.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013). In evaluating the *Winckelmann* factors, we first find no dramatic change in the penalty landscape that might cause us pause in reassessing appellant's sentence. Additionally, appellant was tried and sentenced at a general court-martial by a military judge and the nature of the remaining offense still captures the gravamen of the original offenses and the circumstances surrounding appellant's conduct. Finally, based on our experience, we are familiar with the remaining offense so that we may reliably determine what sentence would have been imposed at trial. We are confident that based on the entire record and appellant's course of conduct, the military judge would have imposed a sentence of at least that which was adjudged.

Reassessing the sentence based on the noted error and the entire record, we AFFIRM the sentence as adjudged. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his findings set aside by our decision, are ordered restored.

Senior Judge TOZZI and Judge CELTNIEKS concur.

FOR THE COURT:

JOHN P. TAITT
Deputy Clerk of Court

5